CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

NATHAN D. THEOBALD (CABN 328837)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7185
FAX: (415) 436-7234
nathan.theobald@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RODNEY LAMAR GREEN,<br><br>Defendant. | Case No. 4:26-cr-00277-YGR<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: October 8, 2026<br>Hearing Time: 9:30 a.m.<br><br>Hon. Yvonne Gonzalez Rogers |

## I. INTRODUCTION

On March 21, 2026, emergency personnel responded to the intersection of 26th Street and Filbert Street, in Oakland, California. Oakland police encountered Rodney Lamar Green, the driver and sole occupant of a vehicle involved in a single-vehicle crash. As emergency personnel assisted Mr. Green, a paramedic discovered a Polymer80 semiautomatic pistol in Mr. Green's handbag, containing one magazine with 8 rounds of ammunitions and an extended magazine containing 29 rounds of ammunition. Officers also found over $11,000 in cash on Mr. Green.

As part of a surge in federal firearm enforcement measures in Oakland and the East Bay, on June 4, 2026, a grand jury indicted Mr. Green for one count of being a felon in possession of ammunition in

violation of 18 U.S.C. § 922(g)(1). Federal agents arrested Mr. Green on June 17, 2026, and he pleaded guilty on July 23, 2026. For the reasons set forth below, the government joins Probation and recommends that the Court sentence Mr. Green to 15 months, three years supervised release, a $10,000 fine, and a $100 special assessment.

## II. OFFENSE CONDUCT

### A. The Illegal Possession of Firearms Poses an Unacceptable Danger to Oakland and Surrounding Communities

Mr. Green's conduct in this case, which is described in detail below, did not occur in a vacuum. Rather, his illegal possession of ammunition with a firearm helps to fuel the wave of gun violence that is and has been ravaging Oakland. The proliferation of illegal firearms amplifies the issue of violent crime, as robberies, burglaries, domestic violence incidents, or even routine altercations like road rage incidents, carry the potential to become deadly when the participants are armed. Illegal firearms are also central to the challenge of gang violence, with groups of young armed people too often turning residential neighborhoods into combat zones. Although the rate of shootings has fallen from its peak in 2023, the number of shootings and gun-related murders remains unacceptably high.

Harrowing statistics underscore the damage illegal firearms inflict on Oakland. In 2025, the city suffered 67 homicides at a rate of 15 homicides per 100,000 residents. This homicide rate is *five times* that of San Francisco, and substantially higher than neighboring cities in Berkeley and San Leandro.



| City | 2025 Population | Homicides 2025 | Homicides (per 100k) |
|---|---|---|---|
| *Oakland* | *444,196* | *67* | *15* |
| San Francisco | 826,079 | 28 | 3 |
| Los Angeles | 3,874,000 | 230 | 6 |
| Berkeley | 123,195 | 1 | 0.8 |
| San Leandro | 86,587 | 3 | 3.5 |
| San Jose | 993,000 | 24 | 2.4 |

It is not a mystery why Oakland has suffered so many more homicides than its neighbors. It is because of illegal firearms. Of the 67 homicides in 2025, 65 of them were committed with a firearm. Indeed, as part of the violent crime reduction initiative, a different defendants charged—not Mr. Green—had engaged in a shootout in a crowded downtown Oakland nightclub in the early morning of March 7, 2026, in which at least five others also suffered gunshot wounds during the incident and two people were killed, including a schoolteacher who was shot as she attempted to run from the gunfire. *See United States v. Jarvis Toussaint*, Case No. 4:26-cr-00235-JSW, Dkt. 1.

And the problem is not limited to murders. There were 350 individuals who were shot in 2025, many suffering gruesome injuries with lifelong impacts. 2025 also saw 1,674 robberies and 2,950 aggravated assaults in 2025. As with homicides, Oakland suffers robbery and aggravated assaults at a much higher rate when compared with its neighbors. A substantial portion of these violent crimes also involved firearms. These violent confrontations, when mixed with illegally possessed firearms, all too often escalate into a shooting or a murder.

Nor has the problem abated in 2026. Through only the first quarter of 2026, Oakland had already suffered 13 homicides, 374 robberies (102 involving firearms), 588 aggravated assaults, and 53 assaults with a firearm (including shootings and injuries by firearms). These statistics are staggering.

This is also not a problem that is limited to people already involved in criminal activity. Every resident of Oakland is made less safe by these illegal guns. Innocent bystanders uninvolved in criminal activity have been maimed and killed. For example, in 2021, an almost two-year old boy was shot and killed in his car seat in his family vehicle when gang members engaged in a shootout on I-880 in Oakland. And, as described above, in March 2026, an innocent 33-year-old middle school teacher was murdered at a mass shooting at a night club in Oakland. Additionally, two other defendants (not Mr.

Green) charged in the violent crime reduction initiative are charged with illegally possessing ammunition that was fired during a shooting in a parking lot near two schools in Oakland. *See United States v. Jamonn Blincoe*, 4:26-cr-00270-JST; *United States v. Kawan Hardy*, 4:26-cr-00271.

These tragedies and grim statistics are astounding and unacceptable. Oakland has suffered enough. The proliferation of illegal firearms and ammunition is not a trivial matter, but a direct threat to the safety of the community. Mr. Green's offense is grave and must be set against this context of a culture of violence in Oakland that must be disrupted.

**B. Green is Caught with a Ghost Gun, Extended Magazine, and Ammunition.**

At approximately 9:30 p.m. on March 21, 2026, officers and emergency personnel responded to report of a single-vehicle collision near 26th Street and Filbert Street, in Oakland, California. Once there, officers found Mr. Green in the driver's seat of a vehicle that had crashed into an unoccupied parked car. Observers reported that the driver appeared to have had a seizure.

Emergency personnel placed Mr. Green into a gurney in an ambulance. However, because Mr. Green was disoriented and injured, paramedics removed his bag and searched it for Mr. Green's and paramedics' safety. Inside the bag was a Polymer80 privately manufactured firearm without a serial number—also known as a ghost gun—as well as two magazines, one of which was an extended magazine, and 37 total rounds of ammunition.

## III. THE SENTENCING GUIDELINES AND CRIMINAL HISTORY

The government agrees with Probation's calculation of the sentencing Guidelines in this case, which are set forth below and in the Plea Agreement. PSR ¶¶ 13-22.

| **Count 1: 18 U.S.C. § 922(g)(1) – Felon in Possession of Ammunition** | | |
|---|---|---|
| | **U.S.S.G. Section** | **Level/Points** |
| Base Offense Level | § 2K2.1(a)(4)(B)(i) | 20 |
| Acceptance of Responsibility | § 3E1.1 | -3 |
| Total offense level | | 17 |

The government also agrees with Probation's calculation of Mr. Green's criminal history. His prior criminal convictions give Mr. Green a total criminal history score of four, which corresponds to a Criminal History Category (CHC) of III. *See* PSR ¶ 31. With an offense level of 17 and a CHC III, the Guidelines range in this case is 30–37 months.

## IV. SENTENCING RECOMMENDATION

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a).

### B. The Government's Recommended Sentence

The seriousness of the offense, the need for deterrence, and the history and characteristics of the defendant all support the government's recommendation. As discussed above, gun violence has plagued Oakland for far too long. In an effort to tackle this problem, beginning in March 2026, federal and local law enforcement coordinated efforts in a surge of federal firearm enforcement measures in Oakland and the East Bay that resulted in the seizure of 76 illegally possessed firearms and charges against 51 defendants. Mr. Green is one of those defendants. The government's recommended sentence in this case plays a key role in its efforts to disrupt the cycle of gun violence in the East Bay by deterring Mr. Green from possessing dangerous guns and ammunition and others like Mr. Green who continue to threaten the safety of the East Bay community by illegally possessing firearms or ammunition.

The facts and circumstances of the offense also support a meaningful sentence here. Mr. Green was moving around Oakland with an untraceable ghost gun, 37 rounds of ammunition, an extended magazine, and thousands of dollars in cash in his pockets. And he did this after prior felony gun-related convictions for unlawful possession of a firearm, including most recently in 2022, as well as a prior conviction for pimping. None of these convictions or sentences deterred Mr. Green. A meaningful

sentence in this case, which would mark the first time Mr. Green has been in federal custody or on federal supervision, is necessary to deter him.

The history and characteristics of Mr. Green, on the other hand, support a more lenient sentence. It appears that while he had some stability as a child, his mother struggled with a drug dependency, and he observed violent crime from a young age.

Also in Mr. Green's favor is that after his arrest on the federal indictment, he took early and full responsibility for his criminal misconduct. The government is optimistic that this case will serve as a wake-up call for Mr. Green. He is now 45 years old; he has a young son and expressed dedication to his children. Moreover, he appears to have the tools and skills to seek employment as a tattoo artist. However, he cannot continue to engage in behavior that threatens the public. Rather than being a threat to the community, the government is hopeful that its recommended sentence, which includes three years of supervised release after his prison term, will cause Mr. Green to transform himself into a productive member of the community.

## V. CONCLUSION

For the reasons stated above, the government joins Probation and recommends that the Court sentence Rodney Lamar Green to 15 months' imprisonment, three years' supervised release, a $10,000 fine, and a $100 special assessment.

DATED: October 1, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*<u>/s/ Nathan D. Theobald</u>*
NATHAN D. THEOBALD
Assistant United States Attorney